IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH FORNEY, | CIVIL DIVISION |
| Plaintiff, | Case No. 3:24-cv-4 |
| v. | |
| SOMERSET AREA AMBULANCE ASSOCIATION, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A. *<u>Preliminary Statement</u>*

1. The plaintiff Sarah Forney brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination, harassment and retaliation based upon her gender. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B. *<u>Jurisdiction</u>*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq* and under the doctrine of pendant jurisdiction.

3. On or about July 17, 2023, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2023-02401. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission

4. The EEOC issued a Notice of Right to Sue on December 11, 2023.

5. This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. **The parties**

6. The plaintiff is an adult individual who resides in Friedens, PA 15541 (Somerset County).

7. The Somerset Area Ambulance Association ("Somerset" or the "company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district.

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. **Factual Background**

10. The plaintiff, Sarah Forney, was employed by Somerset from October 1, 2022 until May 26, 2023.

11. Somerset provides emergency medical services for the local community.

12. The plaintiff had previously worked for Somerset on a per diem basis from October 2019 until approximately Spring 2021.

13. The plaintiff was employed as an EMT. Her duties included providing emergency patient care, transporting patients to and from hospitals and providing basic and advanced life support.

14. Typically, the plaintiff worked two 24-hour shifts a week. The plaintiff averaged approximately 8 calls per day while on active duty.

15. At all times relevant, the plaintiff performed the functions of her job competently and efficiently and was considered to be a satisfactory employee.

16. The plaintiff's main supervisor was John Jordan. Brian Fadrow was one of various the supervisors of the plaintiff's crew. Jason Beener was another supervisor to whom the plaintiff reported from time to time. Some of the plaintiff's co-workers were Scott Keyser, Randy Anderson, Jim Melius, William Grasser and Dean Durst.

17. While the plaintiff was employed by Somerset she was subjected to a sexually hostile environment in the workplace on account of her gender as detailed more fully below. Ultimately, her employment was terminated because of her gender and in retaliation for bring complaints of sexual harassment to the attention of management.

18. Co-employees subjected the plaintiff to unwelcome sexual comments and engaged in other verbal conduct of a sexual nature. In addition, the plaintiff was subjected to unwanted sexual advances and contact by co-workers. Some examples of this inappropriate and sexually harassing conduct follow (this is not an exhaustive list):

   (a)   Anderson made sexual comments towards the plaintiff on a frequent basis, often saying things about how he wanted to fuck her.

   (b)   Anderson often would also come up to the plaintiff and undid her bra clasps in the back. Sometimes he did that to her when no one else was present and there were times that he did that when there were other people present.

   (c)   On more than one occasion, Anderson would try to put his hand up and underneath the plaintiff's shirt in attempts to unclasp her bra and, while doing so, would attempt to grab her breasts;

   (d)   On one occasion the plaintiff was on a call and her shirt got soiled. She asked Melius to get her another t-shirt out of the office so that she could change. Both Melius and Anderson came into the female bunk room with the t-shirt and told her that they would not give it to her unless she changed in front of them.

   (e)   On one occasion the plaintiff was in the female bunk room lying down because she had a migraine headache. Grasser came into the bunk room, saw the plaintiff and started tickling her. He then laid on top of her and used the weight of his body to keep her pinned while he continued to inappropriately touch her. He wouldn't stop, despite the plaintiff yelling

3

      at him to get off her. She was finally able to push him off and had to flee from the bunk room to get away from him.

(f)     On numerous occasions Grasser came up from behind the plaintiff and "copped a feel" by grabbing her breasts.

(g)     On numerous occasions Grasser would grab the plaintiff from behind and "dry humped" her, simulating a sexual act, replete with "sexual moans" and calling out, "Oh baby!"

(h)     Keyser repeatedly sent the plaintiff text messages telling her things like "*Hey I really like to date u*", "*I really like u a lot*", "*I do like u alot but u won't give me the time and day*". He was unrelenting in his overtures, even after the plaintiff would tell him to stop asking her out and that she was not interested in a romantic relationship with him.

(i)     Keyser did not limit his unwanted sexual advances to text messages. He often propositioned her at work saying things like "why don't you just let me take out", "just give me a chance", "you know I've liked you and wanted to date you forever".

(j)     On one occasion, Keyser was making unwanted sexual advances towards the plaintiff. She tried to ignore him, but he kept leaning in closer and closer to her. The plaintiff told him to stop, but he wouldn't. He kissed her cheek. The plaintiff leaned away and told him, "hey, it ain't gonna happen, leave me alone!"

(k)     When the plaintiff rebuffed Keyser's advances, he would get sullen and angry with the plaintiff in retaliation. He would be very hostile with the plaintiff during the workday. Invariably, this would pass, and Keyser would start back up with his unwanted and unwelcome sexual advances.

(l)     Durst regularly said disparaging and demeaning things to the plaintiff that were usually sexist in nature. He did not treat similarly situated male co-workers in this fashion. He regularly accused the plaintiff of things that were someone else's doing, but, because the plaintiff is female, she was automatically at fault.

(m)     Durst often got into the plaintiff's personal space and do things like rub her shoulders and put his arm around her. Those physical contacts were unwelcome and unwanted.

19.     The plaintiff raised issues with management regarding the harassment on a regular basis, but her concerns were not taken seriously. At first, she tried to follow the chain of command by reporting the sexual harassment to Fadrow and on other occasions, to other

4

supervisors to whom she directly reported. Unfortunately, nothing was done by management to address or correct the situation.

20. In late April 2023, the plaintiff made another attempt to stop the sexual harassment to which she was being subjected. She went into the office and met with Fadrow and Charlene Sredy, an office staff employee. The plaintiff raised her issues about Keyser, including the screen shots and other incidents of harassment. Sredy told the plaintiff to send her an email with the screen shots and that she would, in turn, send them to Jordan.

21. That same day, the plaintiff sent an email to Sredy with a copy of some of Keyser's text messages to her as proof of how he was sexually harassing her. Upon information and belief, Sredy forwarded the email and the screen shots of the text messages to Jordan. The plaintiff did not hear back from Jordan or anyone else in management. Again, she was being ignored.

22. In late April, the plaintiff had to take time off work to take care of some medical issues. She requested time off, which was granted. She ended up being on medical leave for approximately five weeks.

23. On approximately May 24, 2023, the plaintiff contacted Brandy King via email to let her know that she had recovered and was ready to get back on the schedule. She did not get a response.

24. The plaintiff called the station the next day and talked to Beener. Beener acknowledged that the plaintiff was not on the schedule and told her that he saw a note that she was supposed to talk to Jordan about her schedule.

25. The plaintiff sent an email to Jordan the next morning, May 26, 2023 inquiring about being put back on the schedule.

26. Later that morning, Jordan and Beener called the plaintiff. They told her that her employment was being terminated "due to at-will severance." They refused to provide any specific reason whatsoever.

27. The real reason for her termination was on account of her gender and in retaliation for complaining about the sexual harassment to which she had been subjected while she worked for Somerset.

## FIRST CAUSE OF ACTION

28. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

29. The plaintiff is female and thus is protected against harassment and discrimination on the basis of her gender under Title VII.

30. The plaintiff was qualified for her position.

31. As detailed above, the plaintiff was subjected to a sexually hostile workplace because of her gender.

32. Despite her qualifications, the plaintiff was terminated.

33. The defendant's harassment and discharge of the plaintiff were in violation of Title VII because it was based upon her gender.

34. In addition to harassment and discrimination based on gender, the plaintiff was retaliated against for engaging in protected activity, i.e., that she complained to management about being sexually harassed.

35. The defendant's violations of Title VII were committed with intentional or reckless disregard for the plaintiff's federally protected rights.

## **SECOND CAUSE OF ACTION**

36. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

37. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination, harassment and retaliation under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

38. The defendant's violations of the PHRA were committed with intentional or reckless disregard for the plaintiff's protected rights under the PHRA.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII, the ADA, and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306

220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated: January 3, 2024